## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VERNON L. EALY, JR.,          :     No. 3:25-CV-1235
         **Plaintiff**     :

                   :     **(Judge Munley)**

     **v.**                :

                   :

FRANKLIN COUNTY, *et al.*,    :
        **Defendants**    :

### MEMORANDUM

Plaintiff Vernon L. Ealy, Jr., initiated the above-captioned *pro se* action under 42 U.S.C. § 1983,[1] alleging multiple constitutional violations by Franklin County and Dauphin County officials.  The court will dismiss Ealy's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted but will provide leave to amend.

## I.    BACKGROUND

Ealy asserts that he was a pretrial detainee at all times referenced in his complaint.  (Doc. 1 ¶ 3).  He recounts that in 2019 and 2020, while detained at Franklin County Jail (FCJ), he made waves with the administration by advocating for better food at the prison, eventually gaining outside media attention.  (Id. ¶¶ 18-22).  Ealy additionally alleges that he filed multiple grievances and civil rights

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

lawsuits concerning "inmates['] rights" during this time.  (Id. ¶ 19).  He asserts that, after a coordinated food strike and the subsequent media scrutiny, he successfully negotiated with FCJ officials to obtain better meals for the inmates.  (Id. ¶¶ 22-23).  According to Ealy, on the eve of being transferred to another facility, he was granted bail in his pending criminal case.  (Id. ¶ 23).

Ealy returned to FCJ as a pretrial detainee on July 10, 2023.  (Id. ¶ 25).  The next day, he was transported to Dauphin County Prison (DCP)—60 miles away—by unknown "John Doe" FCJ transportation officials.  (Id. ¶ 27).  After questioning both FCJ and DCP officials, Ealy was eventually informed that he was transferred to DCP on a "Warden to Warden agreement."  (Id. ¶¶ 26, 29).

Ealy asserts that he endured unconstitutional conditions of confinement during his five-month detention at DCP.  He alleges that there was extreme heat and no ventilation, bug and rodent infestations, malfunctioning toilets in the cells that would fill with feces and urine from adjoining cells, frequent lockdowns, and overcrowding.  (Id. ¶ 30).

Ealy next asserts several additional undeveloped claims.  He first alleges that he is a Muslim and that he was denied his "religious freedoms" at DCP because he missed religious services and there was no "Taleem" or "Jumah" called during his DCP detention.  (Id. ¶¶ 31-32).  He further claims that he was denied access to the courts because he signed up for law library but, due to the

2

long waiting list, never received law library access during his five months at DCP.
(Id. ¶¶ 34-35). Finally, he claims that numerous Defendants conspired to
retaliate against him, including various prosecutors at the Franklin County District
Attorney's Office. (Id. ¶¶ 43, 56-58).

Ealy sues thirteen defendants: Franklin County District Attorney Brink,
Franklin County Assistant District Attorney Faust, FCJ Warden Schell, FCJ
Deputy Warden Weller, FCJ Deputy Warden Franzoni, FCJ Deputy Warden
Scott, FCJ Major Morrow, FCJ Captain Arter, FCJ "Director of Treatment"
Sterner, two "John Doe" officers at FCJ, DCP Warden Briggs, and DCP Deputy
Warden Pierre.[2] (Id. ¶¶ 4-16). He seeks retroactive declaratory relief that his
rights were violated, various forms of prospective injunctive relief, nominal
damages, compensatory damages, and punitive damages. (Id. at pp. 10-11).

## II.    STANDARD OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable,"
unrepresented prisoner complaints targeting governmental entities, officers, or
employees. See 28 U.S.C. § 1915A(a). One basis for dismissal at the screening
stage is if the complaint "fails to state a claim upon which relief may be
granted[.]" Id. § 1915A(b)(1). This language closely tracks Federal Rule of Civil

---

[2] Ealy also lists "Franklin County" as a defendant in his caption, but he does not identify the
county as a defendant in the body of his complaint, nor does he proffer any cognizable Section
1983 allegations against the county.

3

Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6). See Grayson v. Mayview State Hosp., 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); O'Brien v. U.S. Fed. Gov't, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (*per curiam*) (nonprecedential); cf. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000).

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. See Phillips v. County of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008). In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry. See Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted). At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (alterations in original)). Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded. Id. (quoting Iqbal, 556 U.S. at 679). Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679). Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

Because Ealy proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). This is particularly true when the *pro se* litigant, like Ealy, is incarcerated. See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III.    DISCUSSION

Before addressing the sufficiency of Ealy's complaint, the court must identify the claimed constitutional violations.  See Albright v. Oliver, 510 U.S. 266, 271 (1994) ("The first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed."); Graham v. Connor, 490 U.S. 386, 394 (1989) (explaining that analysis of a Section 1983 claim requires "identifying the specific constitutional right allegedly infringed by the challenged" conduct).  As best as the court can ascertain, Ealy is asserting the following constitutional torts: (1) First Amendment retaliation regarding his transfer to DCP; (2) Fourteenth Amendment conditions of confinement for the alleged unlawful conditions at DCP; (3) First and Fourteenth Amendment access to courts regarding lack of law library access at DCP; (4) First Amendment free exercise of religion; and (5) Section 1983 conspiracy to violate First Amendment rights.[3]  The court will address the sufficiency of these claims in turn.

### A.    Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."  Rode v.

---

[3] Some of Ealy's allegations discuss the medical care he received at DCP.  (See Doc. 1 ¶¶ 30, 48).  Those allegations, however, are the subject of a different Section 1983 lawsuit that is pending in this court, see generally Ealy v. Schell, No. 3:24-cv-00126 (M.D. Pa.), and therefore will not be discussed further.

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); see also

Ashcroft v. Iqbal, 556. U.S. 662, 676 (2009) (affirming same principle in Bivens

context). Rather, a Section 1983 plaintiff must plausibly plead facts that

demonstrate the defendant's "personal involvement in the alleged misconduct."

Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020). Personal involvement can

include direct wrongful conduct by a defendant, but it can also be demonstrated

through evidence of "personal direction" or "actual knowledge and

acquiescence"; however, such averments must be made with particularity. Id.

(quoting Rode, 845 F.2d at 1207). Furthermore, it is equally settled that

involvement in the post-incident grievance process alone does not give rise to

Section 1983 liability. See id. (affirming dismissal of claims against prison

officials for lack of personal involvement when officials' "only involvement" was

"their review and denial of [plaintiff]'s grievance"); Lewis v. Wetzel, 153 F. Supp.

3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); Brooks v. Beard, 167 F. App'x

923, 925 (3d Cir. 2006) (nonprecedential); Alexander v. Gennarini, 144 F. App'x

924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims

against certain defendants were "properly dismissed" because the allegations

against them "merely assert their involvement in the post-incident grievance

process").

Ealy's first and predominant shortcoming is his failure to plausibly allege personal involvement by the named Defendants in the purported constitutional violations. His allegations repeatedly lump Defendants together and state—in a conclusory manner—that they took some collective, wrongful action. For example, he summarily asserts that "defendants Schell, Briggs, Pierre, Morrow, Arter, Brink, [and] Faust" organized and ordered his transfer from FCJ to DCP. (Doc. 1 ¶ 50). In another paragraph, he claims that "Franzoni, Morrow, Arter, Weller, [and] Schell" failed to protect him by not stopping his transfer to DCP. (Id. ¶ 52). And again, several paragraphs later, Ealy alleges that "defendants Schell, Morrow, Scott, Weller, Franzoni, Arter, Faust, John 'Does,' and Brink" violated his Fourteenth Amendment rights by failing to prevent his transfer to DCP where he experienced unconstitutional conditions of confinement. (Id. ¶ 60).

The problem with these vague allegations is that they do not allege personal involvement in any particular constitutional misconduct. They are simply conclusory statements that are bereft of plausible facts. Instead of pleading what each Defendant did (or did not do) to infringe Ealy's constitutional rights, these allegations consist of only conclusory, collective acts.

Ealy does plead specific conduct for some Defendants, but the actions alleged do not implicate personal involvement for Section 1983 purposes. For

example, he alleges that Director Sterner, Deputy Warden Weller, and Warden Schell denied his grievance requests and appeals regarding his transfer, (see id. ¶ 42(a)), but involvement in the post-incident grievance process does not constitute personal involvement for a Section 1983 claim. Ealy likewise pleads that the two "John Doe" officers from FCJ transported him to DCP, (see id. ¶¶ 27-28, 51), but simply transferring a prisoner from one institution to another—an extremely common occurrence—does not implicate involvement in a constitutional tort.

In other claims, there is no personal involvement alleged whatsoever. For instance, while Ealy contends that his free exercise rights were violated at DCP, he does not assert who violated these rights.

Thus, Ealy's primary pleading deficiency is his failure to plausibly allege personal involvement for the thirteen Defendants he is attempting to sue. The court next turns to Ealy's individual Section 1983 claims.

## B. First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system." Wisniewski v. Fisher, 857 F.3d 152, 156 (3d Cir. 2017) (quoting Newman v. Beard, 617 F.3d 775, 781 (3d Cir. 2010)). To state a First

9

Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action. Id. (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (quoting Rauser, 241 F.3d at 333).

There are a variety of ways to establish causation for a First Amendment retaliation claim. One method is to show "unusually suggestive" timing between the protected conduct and the adverse action. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). When a plaintiff relies solely on circumstantial evidence of temporal proximity, the time between the protected conduct and the adverse action is often measured in days rather than weeks or months. See Conard v. Pa. State Police, 902 F.3d 178, 184 (3d Cir. 2018). However, there is no "bright line rule limiting the length of time that may pass between a plaintiff's protected speech and an actionable retaliatory act by a defendant." Id. Another approach is to demonstrate "a pattern of antagonism coupled with timing." DeFlaminis, 480 F.3d at 267. Finally, causation can be inferred "from the evidence gleaned from the record as a whole." Watson v.

Rozum, 834 F.3d 417, 424 (3d Cir. 2016) (citing Farrell v. Planters Lifesavers
Co., 206 F.3d 271, 281 (3d Cir. 2000)).  Logically, a plaintiff asserting retaliation
"will have to show . . . that the decision maker had knowledge of the protected
activity[.]"  Moore v. City of Philadelphia, 461 F.3d 331, 351 (3d Cir. 2006)
(citation omitted).

Ealy's primary claim in his lawsuit is that he was transferred from FCJ to
DCP in retaliation for his previous grievances and lawsuits.  Filing grievances
and lawsuits is protected First Amendment conduct.  Moreover, it is possible that
Ealy's allegations sufficiently state an adverse action, insofar as he claims that
his prison transfer made it more difficult to communicate with his criminal defense
attorney and prohibited his ailing mother and friends from visiting him.  However,
his vague and conclusory allegations regarding his prior protected conduct do not
sufficiently plead causation.

It is well settled that causation cannot be inferred simply by asserting that a
plaintiff pursued some protected activity (like a lawsuit or prison grievance)
against a defendant or nonparty prison official who is not the alleged perpetrator
of the retaliatory adverse action.  See, e.g., Nunez v. Wetzel, No. 1:21-cv-01484,
2023 WL 2385931, at *5 (M.D. Pa. Mar. 6, 2023) (collecting cases); Kendrick v.
Hann, No. 1:19-cv-01642, 2021 WL 2914986, at *9 (M.D. Pa. July 12, 2021);
Murray v. Smithbower, No. 1:17-cv-0127, 2021 WL 1103524, at *7 (M.D. Pa.

Mar. 23, 2021); Horan v. Collins, No. 1:13-cv-00140, 2016 WL 5030468, at *6 (M.D. Pa. Aug. 8, 2016); Victor v. Lawler, No. 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010); Evans v. Rozum, No. 07-cv-230J, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("[T]here is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others." (second alteration in original)); Royster v. Beard, No. 1:06-cv-0842, 2008 WL 2914516, at *6 (M.D. Pa. July 24, 2008) (concluding that plaintiff failed to satisfy the causal connection for his retaliation claim against defendant because previous grievance did not name or impact that defendant), aff'd 308 F. App'x 576 (3d Cir. 2009) (nonprecedential) (agreeing with district court analysis). Such general allegations fail to establish or even infer knowledge of the protected conduct, and they likewise fail to show why a defendant would take the alleged adverse action.

Ealy does not specify what previous grievance or grievances he is referring to, whom those complaints targeted or affected, or how any Defendant had knowledge of this protected conduct. As to prior lawsuits, he lists "3:20-cv-0103" and "3:13-cv-2781." (Doc. 1 ¶ 19). In case number 3:20-cv-0103, the only duplicative defendants sued are Director Sterner and Deputy Warden Weller. See Ealy v. Bechtold, No. 3:20-cv-0103 (M.D. Pa.). In case number 3:13-cv-2781, the only duplicative defendant is Deputy Warden Weller. See Ealy v.

Keen, No. 3:13-cv-2781 (M.D. Pa.). Yet Ealy has not plausibly alleged why these past lawsuits (one of them more than a decade old and the other three years old) would cause Sterner or Weller to retaliate against him by transferring him to DCP in July 2023. Such an extreme time delay is simply insufficient to raise the inference of causation for a retaliation claim.

Ealy, in fact, has not plausibly alleged that Sterner or Weller was responsible for his transfer to DCP. The closest Ealy comes to plausibly assigning responsibility for the transfer is when he asserts that it was undertaken on a "Warden to Warden agreement." (Doc. 1 ¶ 29). But that statement, of course, implies that liability for the transfer falls on Warden Schell and Warden Briggs, and Ealy has not alleged facts that would establish that *either* warden had knowledge of Ealy's prior First Amendment conduct or that such conduct would motivate them to transfer Ealy to DCP in 2023.

Ealy, therefore, has failed to plausibly plead causation as to any Defendant, the third element of a retaliation claim. Because Ealy fails to adequately plead a required element of his claim, it must be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1).

### C.    Fourteenth Amendment Conditions of Confinement

When a pretrial detainee asserts a conditions-of-confinement claim, the Due Process Clause of the Fourteenth Amendment requires courts to consider

13

"first, whether any legitimate purposes are served by the[] conditions, and second, whether the[] conditions are rationally related to these purposes." See Hubbard v. Taylor, 538 F.3d 229, 232 (3d Cir. 2008) (Hubbard II) (quoting Union Cnty. Jail Inmates v. Di Buono, 713 F.2d 984, 992 (3d Cir. 1983)).  If pretrial detainees are subjected to conditions that are not reasonably related to a legitimate governmental objective, an inference may be made that the purpose of the prison official's action is punishment.  Hope v. Warden York Cnty. Prison, 972 F.3d 310, 326 (3d Cir. 2020).  Thus, "a particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose."  Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007) (quoting Rapier v. Harris, 172 F.3d 999, 1005 (7th Cir. 1999)).

As the Third Circuit instructs, courts confronted with a Fourteenth Amendment conditions-of-confinement claim must "consider the totality of the circumstances of confinement."  Hope, 972 F.3d at 326 (citing Hubbard I, 399 F.3d at 159-60).  And, like an Eighth Amendment conditions-of-confinement claim by a convicted and sentenced prisoner, a Fourteenth Amendment conditions-of-confinement claim by a pretrial detainee requires a showing of deliberate indifference on the part of prison officials.  Edwards v. Northampton

14

County, 663 F. App'x 132, 135 (3d Cir. 2016) (nonprecedential) (citing Colburn v. Upper Darby Township, 946 F.2d 1017, 1024 (3d Cir. 1991)).

Ealy's Fourteenth Amendment conditions-of-confinement claim fails because he has not plausibly alleged deliberate indifference by any Defendant. Ealy has not alleged who was potentially responsible for the purported conditions at DCP, how long he was exposed to them, who had knowledge of the conditions and was deliberately indifferent toward them, or which Defendant (or Defendants) he informed about the conditions and subsequently acted with deliberate indifference toward them. Without such fundamental allegations of deliberate indifference by any Defendant, dismissal of this claim is required under Section 1915A(b)(1). See Edwards, 663 F. App'x at 135-36. This includes Ealy's undeveloped claims of "failure to protect" against various FCJ officials, as he has not plausibly alleged how any FCJ official would have knowledge of his conditions of confinement at DCP.

### D.    First and Fourteenth Amendment Access to Courts

Under the First and Fourteenth Amendments to the United States Constitution, "prisoners retain a right of access to the courts." Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) (citing Lewis v. Casey, 518 U.S. 343, 346 (1996)). Inmates, however, may only proceed on access-to-courts claims in two situations: "challenges (direct or collateral) to their sentences and conditions of

confinement." Id. (citing Lewis, 518 U.S. at 354-55). To adequately plead an access-to-courts claim that is backward-looking in nature,[4] the prisoner must allege "(1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Monroe, 536 F.3d at 205 (quoting Christopher, 536 U.S. at 415). The underlying claim must be described well enough to demonstrate that it is "more than hope," and the complaint must set out the "lost remedy." See Christopher, 536 U.S. at 416-17.

To the extent that Ealy attempts to assert an access-to-courts claim, he has not done so. Although he alleges that he lacked access to the law library at DCP, he has not pled that he suffered an actual injury, i.e., that he lost the chance to pursue a nonfrivolous underlying claim. Nor has he plausibly alleged that he has no remedy other than a Section 1983 lawsuit. Ealy, in fact, provides no details whatsoever regarding the effect, if any, the alleged lack of law library access at DCP had on his access to the courts. Because Ealy has not plausibly alleged any of the elements of an access-to-courts claim, this claim must be dismissed under Section 1915A(b)(1).

---

[4] There is also a category of access-to-courts claims that is forward-looking, in which plaintiffs allege that "systematic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." Christopher v. Harbury, 536 U.S. 403, 413 (2002).

### E.    First Amendment Free Exercise

"Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Shabazz, 482 U.S. 342, 348 (1987) (citations omitted). "Nevertheless, the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000) (en banc). Only beliefs which are (1) sincerely held, and (2) religious in nature are entitled to constitutional protection. See Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); DeHart, 227 F.3d at 51.

Once a prisoner-plaintiff has established that they have a sincerely held religious belief, they must demonstrate that the challenged prison practice or policy (which allegedly infringes on that religious belief) is not reasonably related to penological interests under the factors set forth in Turner v. Safley, 482 U.S. 78 (1987). See DeHart, 227 F.3d at 51. The Turner v. Safley analysis aims to balance the constitutional rights of prisoners with the "security, rehabilitation, and administrative concerns" of prisons. See id.

Ealy claims that he is a Muslim and while at DCP he missed religious services and there was no "Taleem" or "Jumah" called. (Doc. 1 ¶ 31). Ealy does not explain or elaborate on these allegations or assert who was responsible for

the challenged practices. He likewise does not plead the requisite tenets of his faith, nor how DCP officials infringed those tenets and substantially burdened his practice of religion. See Anspach ex rel. Anspach v. Phila. Dep't of Pub. Health, 503 F.3d 256, 272 (3d Cir. 2007) (noting that First Amendment free expression claim considers whether challenged policy substantially burdened plaintiff's practice of religion); DeHart v. Horn, 227 F.3d 47, 53-54 (3d Cir. 2000) (discussing how prison policy impinged upon a specific Muslim practice and potentially burdened prisoner's free exercise rights); Fraise v. Terhune, 283 F.3d 506, 518 (3d Cir. 2002) ("It is obviously impossible to determine whether a regulation leaves an inmate with alternative ways of practicing the inmate's religion without identifying the religion's practices.")). Finally, Ealy's complaint contains no allegation that the DCP practices were not reasonably related to a legitimate penological interest. Consequently, Ealy has failed to state a First Amendment free exercise claim.

## F.    Section 1983 Conspiracy

To state a claim for Section 1983 conspiracy, a plaintiff must plausibly allege: "'(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of

the United States,' with the added gloss under § 1983 that 'the conspirators act under the color of state law.'" Jutrowski v. Township of Riverdale, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (alterations in original) (quoting Barnes Found. v. Township of Lower Merion, 242 F.3d 151, 162 (3d Cir. 2001)).

Moreover, to plausibly allege a conspiracy, a plaintiff must do more than recite talismanic phrases like "conspire" and "act in concert." See Jutrowski v. Township of Riverdale, 904 F.3d 280, 295 (3d Cir. 2018) (explaining that, to state a civil conspiracy claim, a plaintiff must demonstrate that defendants "somehow reached an understanding to deny [the plaintiff] his rights" (alteration in original)); Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (citing Kalmanovitz v. G. Heileman Brewing Co., 595 F. Supp. 1385, 1400 (D. Del. 1984), aff'd 769 F.2d 152 (3d Cir. 1985) ("It is a longstanding rule in the Third Circuit that a mere general allegation ... [or] averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient [to state a claim]." (citing Black & Yates, Inc. v. Mahogany Ass'n, 129 F.2d 227, 231-32 (3d Cir. 1941)))); Stankowski v. Farley, 251 F. App'x 743, 748 (3d Cir. 2007) (nonprecedential) (finding that "conclusory allegation" that defendants "conspired" against him fails to state a claim for civil conspiracy).

Ealy alleges that numerous Defendants, including the District Attorney for Franklin County, conspired to retaliate against him by transferring him to DCP.

But Ealy does not plausibly allege a conspiracy. Rather, he simply uses conclusory and talismanic language like "collaborated," "conspiring," and "conspiracy." (See Doc. 1 ¶¶ 43, 56, 57, 58). Such formulaic, purely legal conclusions must be disregarded. Connelly, 809 F.3d at 787 (quoting Iqbal, 556 U.S. at 679).

Ealy's conspiracy claim fails for an additional reason. As noted above, Ealy has not plausibly alleged a First Amendment retaliation claim. Without identifying an underlying constitutional violation, he likewise fails to state a Section 1983 conspiracy claim. See Harvard v. Cesnalis, 973 F.3d 190, 207 (3d Cir. 2020); Clayworth v. Luzerne County, 513 F. App'x 134, 138 (3d Cir. 2013) (nonprecedential) ("Thus, because [plaintiff] failed to establish an underlying violation of his constitutional rights, his [civil rights] conspiracy claim also fails.") (citing Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993), abrogated on other grounds by United Artists Theatre Cir., Inc. v. Township of Warrington, 316 F.3d 392 (3d Cir. 2003)).

### G.    Official Capacity Claims

Ealy sues all Defendants in their individual and official capacities. (See Doc. 1 ¶ 17). Suing Defendants in their official capacities is akin to suing the respective municipalities—Franklin County and Dauphin County—themselves. See Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690 n.55 (1978). To

assert a Section 1983 claim against a county by way of an official capacity claim against a county employee, a plaintiff must identify a policy or custom fairly attributable to the municipality that caused him constitutional injury. Id. at 690-91. He must also plausibly plead facts showing that each Defendant is a decisionmaker endowed with authority to promulgate or establish an official custom or policy. See Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (explaining that a decision to adopt a particular course of action made by the "government's authorized decisionmakers" represents an act of official government policy (emphasis added)); McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) (noting that plaintiff failed to "allege conduct by a municipal decisionmaker" in his attempt to assert municipal Section 1983 liability).

Ealy has not identified a policy promulgated by any Defendant, nor has he alleged that any Defendant would have decision-making authority to establish a custom or policy. Accordingly, all official capacity claims will be dismissed pursuant to Section 1915A(b)(1) as well.

**H.    Leave to Amend**

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile." Grayson, 293 F.3d at 114. The court will grant Ealy limited leave to amend.

21

It may be possible that Ealy could plausibly state a retaliation claim regarding his transfer to DCP.  He may also be able to cure the deficiencies with his conditions-of-confinement claim.  His retaliation claims against the John Doe FCJ officials, however, will be dismissed with prejudice, as granting leave to amend those claims would be futile.  See Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." (citation omitted)); Centifanti v. Nix, 865 F.2d 1422, 1431 (3d Cir. 1989) ("[T]he district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss.").  Merely transporting a prisoner to a different facility of incarceration does not, and cannot, rise to the level of a constitutional violation.

If Ealy chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings.  The amended complaint should set forth his claims in short, concise, and plain statements, and in sequentially numbered paragraphs (much like he did in his original complaint).  Ealy must address the pleading deficiencies identified in this Memorandum.  Most notably, Ealy must clearly set forth the personal involvement of any Defendant in the alleged constitutional violation.  That is, he must plausibly plead the unconstitutional action (or inaction) of each defendant he is attempting to sue.

22

Ealy must also sign the amended complaint and indicate the nature of the relief sought.  If Ealy desires to raise related state-law tort claims, he must clearly indicate what tort claim he is asserting, against whom he is asserting it, and what actions or omissions by a defendant (or defendants) constitute the elements of such a state-law claim.

If Ealy files an amended complaint that disregards the foregoing guidance, that filing will be summarily stricken from the record.  If Ealy does not timely file an appropriate amended pleading, dismissal of his complaint will automatically convert to dismissal with prejudice and the court will close this case.

## IV.    CONCLUSION

Based on the foregoing, the court will dismiss Ealy's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.  Leave to amend will be granted.  An appropriate Order follows.

Date: 9/25/25

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

23